## MID–CONTINENT LIFE INS. CO. v. SELMON. (No. 3191.)

Court of Civil Appeals of Texas. Amarillo. March 6, 1929.

Rehearing Denied March 29, 1929.

Luther Hoffman, of Wichita Falls, for appellant.

R. S. Ragsdale, of Burkburnett, for appellee.

JACKSON, J. This suit was instituted in the district court of Wichita county, Texas, by the plaintiff, Dee Roy Selmon, against the defendant, Mid-Continent Life Insurance Company, an insurance corporation, on an accident policy issued by the defendant on May 6, 1926, to the plaintiff, who paid the premium therefor.

Plaintiff alleges: That by the terms of said policy, the defendant agreed and promised to pay him $25 per week for not exceeding 200 weeks, if he should suffer injuries totally disabling him, and, if he should receive accidental injuries disabling him to the extent that he could not perform one-half of his important daily duties, the defendant promised and agreed to pay him $12.50 per week for a period not exceeding 26 weeks. That while the policy was in full force and effect, about July 17, 1926, he suffered an injury within the meaning of said policy, by which he was totally disabled for 26 weeks from the date of the injury. That thereafter, and at all times since, he has been, by reason of such injury, disabled and prevented from performing one-half of his important daily duties, but not prevented from performing all of such duties. That by reason of the premises defendant became indebted to plaintiff in the sum of $975. That the defendant has paid $300 on said sum, leaving a balance of $675 unpaid, and which, though often requested, the defendant has failed and refused, and still fails and refuses, to pay. That plaintiff, more than 30 days before the institution of this suit, furnished proper proof of his said injuries, and made due and proper demand on the defendant for payment of said obligation, but the defendant has failed to pay plaintiff said sum, or any part thereof, and he was compelled to employ counsel to bring suit to recover said insurance. That the defendant is therefore in law bound to pay reasonable attorney's fees, which the plaintiff alleges to be the sum of $150, and the further sum of 12 per cent. as statutory penalty imposed by law for the failure and refusal to pay plaintiff's demand within 30 days from notice thereof.

The defendant answered by general demurrer, special exceptions, and general denial, and specially alleged that the contract of insurance sued upon provided that, "if such in-

juries [as are covered by said contract] shall wholly and continuously disable the insured from performing any and every kind of duty pertaining to his occupation for the period of one day or more, but not exceeding 200 weeks during which the insured lives and suffers such continuous total disability, the company will pay him the weekly accident indemnity above stated"—that is, $25 per week.

In this connection, the defendant alleges: That during such period of total disability it paid the plaintiff in two checks, totaling $321.43, which was all the indemnity that the plaintiff was entitled to under the terms of said policy. 'That said checks contain the provision that they are in full and final settlement by the defendant, and a release on the part of plaintiff for all claims arising under said policy by reason of the accidental injuries alleged. The defendant also alleges that the contract provides that, "if such injuries shall wholly and continuously disable the insured from performing one-half, but not all, the important daily duties pertaining to his occupation, or for a like partial disability following total loss of time and under the regular care and treatment of a physician or surgeon, the company will pay for the period of such disability or disabilities, but not exceeding 26 consecutive weeks, one-half of the weekly accident indemnity above stated."

In this connection, the defendant alleges that the plaintiff, on or about November 21, 1927, the exact date being unknown to the defendant, resumed and ever since has discharged his regular and usual employment, and has been regularly employed, and has discharged at least more than one-half, if not all, of the important daily duties pertaining to his occupation, and at no time since the period of his total disability has he been under the regular care or treatment of a physician or surgeon, by reason of which the plaintiff is not entitled to the payment of further indemnity on account of the terms of his contract of insurance. By reason of all of which the terms of the policy have been satisfied and released, and the defendant is not liable in any sum or amount to the plaintiff.

The case was submitted to the court without the intervention of a jury. The court, in his judgment, finds that the plaintiff suffered total disability for a period of 26 weeks and partial disability for a period of 13 weeks after such total disability had ceased. He renders judgment for the plaintiff against the defendant on these findings for the sum of $812.50, less $321.43, the amount theretofore paid by the defendant to the plaintiff. He also gave plaintiff judgment for 12 per cent. statutory penalties on the amount of the judgment and for the sum of $100 as a reasonable attorney's fee. From this judgment this appeal is prosecuted.

■■ The appellant urges as error the action of the trial court in rendering judgment against it for the 12 per cent. penalties and the $100 attorney's fees, because, under the undisputed facts, neither the 12 per cent. penalties nor the attorney's fees are recoverable, as the amount for which demand was made upon the insurance company was in excess of the amount for which a recovery was had.

The suit was filed August 5, 1927. On April 18, 1927, appellee's attorney forwarded to the appellant certain affidavits relative to the appellee's disability, and in a letter with which such affidavits were inclosed stated: "It appears from the foregoing that I made you a very liberal offer of settlement in my letter of March 3d, wherein I offered to take $350, and, if you are now disposed to pay that sum for a full release, send me check. If you are not disposed to settle, you are advised that within 30 days from date hereof I will institute suit against you under the policy," etc. This letter was written, and the receipt thereof is not questioned, more than 30 days before the institution of the suit, and constituted a sufficient demand. Penn Mutual Life Insurance Co. v. Maner, 101 Tex. 553, 109 S. W. 1084.

■ Appellee's demand in this letter, which had theretofore been made on March 3d, was for the payment of $350, and he recovered judgment for $812.50, less the payment of $321.43, which leaves the judgment, exclusive of penalties and attorney's fees, $491.07, which is an amount considerably in excess of the demand made. If article 4736 requires the insured to demand the correct amount to which he is entitled under the policy before he can recover the 12 per cent. damages and reasonable attorney's fees, such article has no reference to the amount demanded in a suit where instituted, but only to the amount of the demand which is to be made on the company liable for the loss, before such a suit is instituted.

By several assignments, which we will consider together, the appellant challenges as error the action of the trial court in rendering judgment against it, because the undisputed testimony shows that plaintiff was not wholly and continuously disabled for a period of 26 weeks after the date of his injury from performing any and every kind of duty pertaining to his occupation; that he did not suffer partial disability, following his total disability, to the extent of disabling him from performing one-half of the important daily duties pertaining to his occupation for a period of 13 weeks following his total disability; that he was not under the regular care and treatment of a physician or surgeon for the period of 13 weeks following his total disability; that the evidence discloses that appellee was injured on the 17th of July, resumed his duties as driller on October 20th, or November 20th, and performed substantially the same work, and received more, or

at least the same, pay therefor he had received prior to his injuries.

The testimony discloses that appellee, on July 17, 1926, while engaged as a driller at a salary of $200 per month, accidentally broke his right arm—fractured what was designated in the testimony as the "funny bone"; that he was treated by a physician for the injury until the latter part of August, 1926, at which time he was given some liniment by the doctor and instructed how to massage and exercise the arm, so as to restore it to its normal condition and usefulness; that the appellee and said physician thereafter met from time to time, casually, and conversed about the injury and how it was getting along, but such meetings and conversations were not by appointment or design, and were not professional; that the appellee continued to use the liniment and follow the instructions given him by the doctor for massaging and exercising his arm for some 8 or 10 months; that at the time of the trial, in February, 1928, the use of the arm was, to a slight extent, still affected by the injury; that about November 18th the appellee was employed as a driller and resumed work at a wage of $10 per day, but after a few days it was discovered that his injury interfered with his performance of his work as a driller, and his employer gave him the position of superintendent of drilling, and continued to pay him for such services $10 per day; that he continued in this position for something like 45 days, with the probable loss of a few days out for the Christmas holidays; that about January 12th he began work again for the same employer, and continued until March 15th, at $9 per day, at which time he was laid off on account of the lack of work; that between March 15th and September 4th he was employed as a driller for 21 days, but was not required to do certain parts of the heavy work usually done by a driller; that about the 3d or 4th of September he was engaged as a driller on a well, but did not run the machinery; that he got an assistant to do the heavy work, which would not have been necessary, if his arm had not been broken; that he worked about 45 days on that job at $8 per day, and until the machinery broke down; that on the 17th of December, 1927, he began work as a pumper on a regular salary of $150 per month, and has continuously held said position from that time.

The testimony fails to show that appellee lost a single job by reason of his injury. On the first job taken, when he resumed his work on November 18th, he was changed from driller to superintendent of drillers, but did not lose his position, nor suffer any decrease in the amount of money he was earning. "Total disability to follow one's usual occupation or employment, as used in an accident policy, means wholly disabled from performing the usual and customary duties of one's employment, and consequently the insurer is not liable as for total disability where the accident has merely prevented the insured from accomplishing as much in a days work as before." 1 C. J. 463, § 163.

In Commonwealth Bonding & Casualty Insurance Co. v. Bryant, 113 Tex. 21, 240 S. W. 893, the Supreme Court, in construing an accident policy, speaking through Judge Greenwood, says: "The language of the policy is fairly and justly susceptible of the interpretation which we think should be given to it, that the larger indemnity was promised if the injuries rendered the insured substantially unable, in the exercise of ordinary care, to perform every material duty pertaining to his occupation."

▇▇ The evidence disclosing that appellee's injury was received July 17th, and he resumed work on November 18th, and that at that time he was not substantially unable to do every material duty pertaining to his occupation of driller, the court erred in allowing appellee compensation for 26 weeks under the total disability clause in the insurance contract. The testimony is not sufficient to support the findings of the court that appellee suffered partial disability to the extent of disabling him from performing one-half of his important duties for a period of 13 weeks following the loss of time on account of his total disability, because the evidence in the record does not show to what extent during his partial disability he was disabled, whether one-half or less.

The judgment is reversed, and the cause remanded.